_____

**SO ORDERED,**

**Judge Katharine M. Samson**
**United States Bankruptcy Judge**
**Date Signed: October 31, 2017**

The Order of the Court is set forth below. The docket reflects the date entered.
_____

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**

| | |
|---|---|
| IN RE: KAPPA DEVELOPMENT AND GENERAL CONTRACTING INC. | CASE NO. 17-51155-KMS |
| DEBTOR | CHAPTER 11 |
| KAPPA DEVELOPMENT AND GENERAL CONTRACTING INC. | PLAINTIFF |
| V. | ADV. NO. 17-06046-KMS |
| HANOVER INSURANCE COMPANY | DEFENDANT |
| AND | |
| HANOVER INSURANCE COMPANY | COUNTER-PLAINTIFF |
| V. | |
| KAPPA DEVELOPMENT AND GENERAL CONTRACTING INC. | COUNTER-DEFENDANT |

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART**
**MOTION FOR SUMMARY JUDGMENT**
**AND DENYING CROSS-MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on the Motion for Summary Judgment (Adv. Dkt. No. 7)[1]

by Plaintiff Kappa Development and General Contracting Inc. ("Kappa") and the Cross-Motion

---

[1] Unless otherwise stated, citations to docket entries in the adversary proceeding appear as "Adv. Dkt. No. ___," and citations to docket entries in the main bankruptcy case appear as "Case Dkt. No. ___." Pagination in both citation forms is to the ECF page number.

for Summary Judgment (Adv. Dkt. No. 10) by Defendant and Counterclaimant Hanover Insurance Company ("Hanover"). Kappa is the Debtor-in-Possession in the underlying chapter 11 case, and Hanover is the surety that bonded a construction project Kappa undertook before filing bankruptcy ("Camp Shelby Project").

The parties dispute the ownership of $67,516.06 ("Contract Funds" or "Funds")[2] that the federal government paid Kappa prepetition in connection with the Camp Shelby Project. Hanover asserts its entitlement to the Funds by right of subrogation for its payment on Kappa's behalf to one of the material suppliers on the Camp Shelby Project. (Resp. to Mot. for S.J. & Cross-Mot. for S.J., ¶¶ 2, 4, Adv. Dkt. No. 10 at 1,2.) On this basis, Hanover seeks a judgment declaring that the Contract Funds "are not property of the Debtor's estate but belong to Hanover" and directing Kappa to pay the Funds to Hanover. (Countercl. ¶ 11 & Prayer for Relief, Adv. Dkt. No. 9 at 5.) Kappa asserts that the Contract Funds are property of the bankruptcy estate "not subject to subrogation claims of Hanover" and seeks an order authorizing it to use the Contract Funds for day-to-day operations. (Compl. Prayer for Relief ¶¶ 2,4, Adv. Dkt. No. 1 at 3-4.)

Kappa is correct that the Contract Funds are property of the bankruptcy estate, but the questions of whether the Funds are subject to any rights of Hanover and whether Kappa may use the funds are not ripe for resolution pending hearing on a Motion to Prohibit Use of Cash Collateral filed by another creditor (Case Dkt. No. 65). Summary judgment is therefore granted on Kappa's Motion on the question of ownership of the Funds, but denied on the questions of Hanover's rights in the Funds and whether Kappa may use the Funds. Summary judgment is denied on Hanover's Cross-Motion.

---

[2] According to Kappa, the amount of the Funds has been reduced by $5000.00 to $62,516.02. (*See* Case Dkt. No. 74.) On August 25, 2017, an agreed order was entered authorizing Kappa to use up to $5000.00 of the Funds to pay a Worker's Compensation premium. (Case Dkt. No. 71.)

## UNDISPUTED FACTS

On October 22, 2013, Hanover issued performance and payment bonds as surety for Kappa on the Camp Shelby Project. (Aff. of Diane P. Pontillo ¶ 3 & Exs. A-1, A-2, Ex. 1 to Resp. to Mot. for S.J. & Cross-Mot. for S.J., Adv. Dkt. No. 10-1 at 1, 4-9.) Hanover paid a $65,570.66 claim by Mississippi Utilities Supply d/b/a Ferguson Enterprises ("MUS") on the payment bond and incurred attorney's fees and expenses of more than $5,000 in connection with issuing the bonds. (*Id.* ¶¶ 4, 8.)

Kappa filed a case under chapter 11 on June 12, 2017. (Case Dkt. No. 1.) On the date of the filing, the Contract Funds were in the trust account of the attorney who represented Kappa on contractual matters. (Aff. of Russell S. Gill ¶¶ 2, 7, 11, Ex. 1 to Mot. for S.J., Adv. Dkt. No. 7 at 6-7.) The Funds had been in that account for two months, the attorney having deposited them with Hanover's permission after Kappa brought the attorney the check from the government for the Camp Shelby Project in early April. (*Id.* ¶ 7; Answer ¶ 8, Adv. Dkt. No. 9 at 2.) No escrow agreement was signed. (Compl. ¶ 9; Answer ¶ 9.)

Upon written demand by Kappa's bankruptcy attorney after the filing of the bankruptcy case, the attorney for Kappa's contractual matters transferred the Funds to the bankruptcy attorney, who deposited the Funds in his trust account. (Aff. of Nicholas Van Wiser, Ex. 2 to Mot. for S.J., Adv. Dkt. No. 7 at 8.) Later, an order was entered requiring the Funds to be placed in a restricted-access Debtor-in-Possession account. (Case Dkt. No. 71.)

## CONCLUSIONS OF LAW

### I. Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a); *see also* Fed. R. Bankr. P. 7056 (applying Rule 56 to adversary proceedings). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law. An issue is 'genuine' if the evidence is sufficient for a reasonable [fact-finder] to return a verdict for the non-moving party." *Ginsberg 1985 Real Estate P'ship v. Cadle Co.*, 39 F.3d 528, 531 (5th Cir. 1994) (citations omitted). A party asserting that a fact either is genuinely disputed or cannot be genuinely disputed must support the assertion by citations "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

The moving party bears the initial responsibility of informing the court of the basis for its motion and the parts of the record that indicate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Once the moving party presents the . . . court with a properly supported summary judgment motion, the burden shifts to the nonmoving party to show that summary judgment is inappropriate." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). But the nonmovant must meet its burden with more than metaphysical doubt, conclusory allegations, unsubstantiated assertions, or a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

On cross-motions for summary judgment, each movant must establish the absence of a genuine issue of material fact and the movant's entitlement to judgment as a matter of law. *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 539 (5th Cir. 2004). "If there is no genuine

issue and one of the parties is entitled to prevail as a matter of law, the court may render summary judgment." *Id.*

## II. The Contract Funds Are Property of the Estate.

The parties view the question of ownership of the Funds through the lens of a fifty-five-year-old decision by the United States Supreme Court under the Bankruptcy Act, *Pearlman v. Reliance Insurance Co.*, 371 U.S. 132 (1962). Hanover asserts that *Pearlman* is still good law, relying on it and its progeny to argue that the Funds are not property of the estate. (Resp. Opposing Mot. for S.J. & Cross-Mot. for S.J. ¶¶ 5-14, Adv. Dkt. No. 10 at 2-7.) Kappa argues that because the Bankruptcy Code expanded the definition of "property of the estate," *Pearlman* is no longer precedential. (Mot. for S.J. ¶ 15, Adv. Dkt. No. 7 at 3-4.) This Court takes no position on *Pearlman*'s continuing vitality, because under the present facts, *Pearlman* does not conflict with the conclusion that the Funds are property of the estate.

### A. Kappa's Prepetition Possessory Interest in the Funds.

Property of the estate is determined by an interplay between state law and bankruptcy law. Under the Bankruptcy Code, the filing of a bankruptcy case creates an estate that includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). This "capacious" definition suggests "that even a debtor's nonpossessory, contingent, partial, derivative, and speculative property interests and causes of action convey to the bankruptcy estate." *LTF Real Estate Co. v Expert S. Tulsa, LLC (In re Expert S. Tulsa, LLC)*, 619 F. App'x 779, 781 (10th Cir. 2015) (citing *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n.9 (1983)). Although bankruptcy law thus defines the boundaries of the bankruptcy estate, state law determines the debtor's underlying property rights. *Croft v. Lowry (In re Croft)*, 737 F.3d 372, 374 (5th Cir. 2013). Here then, the question is whether at the time of the filing of the case,

5

Kappa had a property interest in the Contract Funds under state law such that the Funds succeeded to the estate under bankruptcy law.

Under the Bankruptcy Code, property of the estate includes a debtor's "mere possessory interest." *48th St. Steakhouse, Inc. v. Rockefeller Ctr., Inc. (In re 48th St. Steakhouse, Inc.)*, 61 B.R. 182, 187 (Bankr. S.D.N.Y. 1986). A possessory interest is "[t]he present right to control property . . . by a person who is not necessarily the owner." *Possessory Interest*, *Black's Law Dictionary* (9th ed. 2009).

There being no allegation that Kappa acquired the government check nefariously, Kappa's possession of the check evidences Kappa's prepetition possessory interest in the Funds. Upon deposit of the check into the first attorney trust account and after the proceeds were transferred to the second attorney trust account, Kappa maintained its interest in the Funds. Although Mississippi courts have not considered the question, the consensus across jurisdictions is that "[p]roperty held in an attorney's client trust account belongs to the client." *Boyer v. Davis (In re U.S.A. Diversified Prods., Inc.)*, 193 B.R. 868, 873 n.4 (Bankr. N.D. Ind. 1995) ("[S]tate law principles concerning funds held in an attorney's trust account are so fundamental that they are not questioned."), *aff'd*, 196 B.R. 801 (N.D. Ind. 1996), *aff'd*, 100 F.3d 53 (7th Cir. 1996). Upon the filing of the case, Kappa's prepetition property interest brought the Funds into the bankruptcy estate.

However, property held by the debtor subject to an interest of another entity comes into the estate subject to the other entity's interest. *Ga. Pac. Corp. v. Sigma Serv. Corp.*, 712 F.2d 962, 966 (5th Cir. 1983) (citing 11 U.S.C. § 541(d)); *In re Glenbrook Grp.*, 552 B.R. 735, 738 (Bankr. N.D. Ill. 2016) ("[A] finding that something is property of the estate does not mean a debtor has a greater right to the property, only that the property comes into the estate."). Thus, whether the Funds are

property of the estate has no bearing on whether Hanover is entitled to the Funds. *See Dwyer v. Ins. Co. of Penn. (In re Pihl, Inc.)*, 560 B.R. 1, 11 (Bankr. D. Mass. 2016).

It is for the bankruptcy court to sort out competing property interests. *Ga. Pac.*, 712 F.2d at 968. Hanover may thus rest assured it will yet have its day in court to argue its rights as Kappa's subrogee.

### B. *Pearlman v. Reliance Insurance Co.*

Generally speaking, subrogation is an equitable doctrine whereby one person succeeds by substitution to the rights of another. In the construction context, the surety on performance and payment bonds guarantees the project owner that the contractor will finish the job, including paying subcontractors and suppliers. If the contractor defaults, the surety steps into "three sets of shoes":

> When . . . it pays all the bills of the job to date and completes the job, it stands in the shoes of the contractor insofar as there are receivables due it; in the shoes of laborers and materialmen who have been paid by the surety—who may have had liens; and not least, in the shoes of the government, for whom the job was completed.

*First Indem. of Am. Ins. Co. v. Modular Structures, Inc. (In re Modular Structures, Inc.)*, 27 F.3d 72, 74 n.1 (3d Cir. 1994).

Hanover argues that paying MUS entitled it to step into the shoes of Kappa and thereby succeed to Kappa's rights in the Contract Funds. (Resp. & Cross-Mot. ¶ 6, Adv. Dkt. No. 10 at 2.) Hanover is thus asserting an equitable lien on the Funds. *See Travelers Indem. Co. v. Clark*, 254 So. 2d 741, 746 (Miss. 1971) ("The surety, who paid the materialmen and laborers . . . acquired an equitable lien on the funds in the hands of the contractor."). Regardless, however, of any interest Hanover might have in the Funds, the Funds are still property of the bankruptcy estate.

*Pearlman* does not require a different result. The dispute there was between the surety and the contractor's bankruptcy trustee over rights to money that the government as project owner had withheld from the contractor pending final completion of the work, i.e., retainage, and then paid to the trustee postpetition. *Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 133-34 (1962). Thus, the immediately apparent difference between *Pearlman* and the matter here is that in *Pearlman*, the funds were not in the possession of the debtor on the date of the filing of the case. The Supreme Court ruled under the Bankruptcy Act that "[p]roperty interests in a fund not owned by a bankrupt at the time of adjudication,[3] whether complete or partial, legal or equitable, mortgages, liens, or simple priority of rights, are of course not a part of the bankrupt's property and do not vest in the trustee." *Id.* at 135.

On facts similar to *Pearlman*, the majority of bankruptcy courts follow *Pearlman*, holding that "retainage is not property of the debtor-contractor's estate where there has been a pre-petition default and a surety has stepped in under its bonds." *Mendelsohn v. Dormitory Auth. of N.Y. (In re QC Piping Installations, Inc.)*, 225 B.R. 553, 566 (Bankr. E.D.N.Y. 1998). Hanover cites several such cases, in which the funds at issue were either retainage or a progress payment not in the possession of the debtor on the date of filing. *See First Indem. of Am. Ins. Co. v. Modular Structures, Inc. (In re Modular Structures, Inc.)*, 27 F.3d 72, 73 (3d Cir. 1994) (funds withheld by Salvation Army as project owner); *Am. States Ins. Co. v. United States*, 324 B.R. 600, 601 (N.D. Tex. 2005) (funds withheld by contractor from defaulted bankrupt subcontractor); *United Pac. Ins. Co. v. Mottner (In re Massart Co.)*, 105 B.R. 610, 611 (W.D. Wash. 1989) (postpetition progress payment); *In re Cone Constructors, Inc.*, 265 B.R. 302, 304 (Bankr. M.D. Fla. 2001) (funds

---

[3] "Adjudication" is a now-obsolete term under the Bankruptcy Act that corresponds to the "order for relief" constituted by the filing of a petition under Chapter 7 of the Bankruptcy Code. *Analysis of the Bankruptcy Reform Act of 1978*, 1979 Ann. Surv. of Bankr. Law 15.

withheld by Florida DOT as project owner); *MCA Ins. Co. v. Genson (In re Caddie Constr. Co.)*, 125 B.R. 674, 676 (Bankr. M.D. Fla. 1991) (funds withheld by cities as project owners); *Nat'l Fire & Ins. Co. of Hartford v. Padula Constr. Co. (In re Padula Constr. Co.)*, 118 B.R 143, 146 (Bankr. S.D. Fla. 1990) (funds withheld by school board as project owner).

Hanover attempts to shoehorn the present facts into *Pearlman* by calling the Funds "retainage," based on Kappa's booking a receivable of $67,516.05 as "Retainage (Camp Shelby)." (*See* Ex. B to Pontillo Aff., Ex. 1 to Resp. to Mot. for S.J. & Cross-Mot. for S.J., Adv. Dkt. No. 10-1 at 10.) But Kappa's booking of the Funds is immaterial. "Retainage" is defined as "payments due the general contractor that are set aside to satisfy potential claims against the project." *O'Rourke v. Seaboard Surety Co. (In re E.R Fegert, Inc.)*, 887 F.2d 955, 959 n.3 (9th Cir. 1989); *see also Retainage*, *Black's Law Dictionary* ("A percentage of what a landowner pays a contractor, withheld until the construction has been satisfactorily completed and all mechanic's liens are released or have expired."). Here, whether the Funds had previously been set aside or withheld ceased to be relevant once Kappa was in possession of the Funds.

In summary, the undisputed facts show that Kappa had a possessory interest in the Contract Funds on the date of the filing of the petition. The Funds are therefore property of the estate under 11 U.S.C. § 541(a)(1), subject to any property interests of Hanover and other creditors.

## ORDER

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment (Adv. Dkt. No. 7) by Kappa Development and General Contracting Inc. is **GRANTED** on the question of ownership of the Contract Funds and **DENIED** on the questions of the rights of Hanover Insurance Company in the Funds and whether Kappa may use the Funds.

9

**FURTHER ORDERED** that the Cross-Motion for Summary Judgment (Adv. Dkt. No. 10) by Hanover is **DENIED**.

## *END OF ORDER* ##