_____

SO ORDERED,

*Katharine M. Samson*

**Judge Katharine M. Samson**
United States Bankruptcy Judge
Date Signed: July 2, 2019

The Order of the Court is set forth below. The docket reflects the date entered.
_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| IN RE: KAPPA DEVELOPMENT AND GENERAL CONTRACTING INC. | CASE NO. 17-51155-KMS |
| DEBTOR | CHAPTER 11 |
| KAPPA DEVELOPMENT AND GENERAL CONTRACTING INC. | PLAINTIFF |
| V. | ADV. NO. 17-06046-KMS |
| HANOVER INSURANCE COMPANY | DEFENDANT |
| HANOVER INSURANCE COMPANY | COUNTER-CLAIMANT |
| V. | |
| KAPPA DEVELOPMENT AND GENERAL CONTRACTING INC. | COUNTER-DEFENDANT |
| HANOVER INSURANCE COMPANY | THIRD-PARTY PLAINTIFF |
| V. | |
| THE FIRST, A NATIONAL BANKING ASSOCIATION | THIRD-PARTY DEFENDANT |
| THE FIRST, A NATIONAL BANKING ASSOCIATION | CROSS-CLAIMANT |
| V. | |
| KAPPA DEVELOPMENT AND GENERAL CONTRACTING INC. | CROSS-DEFENDANT |

# OPINION AND ORDER
# GRANTING MOTION FOR SUMMARY JUDGMENT BY HANOVER AND DENYING MOTION FOR SUMMARY JUDGMENT BY THE FIRST

This matter is before the Court on cross-motions for summary judgment by Third-Party Plaintiff Hanover Insurance Company ("Hanover"), ECF No. 34, and Third-Party Defendant The First, a national banking association ("The First"), ECF No. 42.[1] Each party asserts entitlement to funds ("Disputed Funds") currently held in part by Plaintiff Kappa Development and General Contracting Inc. ("Kappa") as Debtor in possession and in part in the registry of the Court. Kappa takes no affirmative position because, whatever the outcome, Kappa expects not to receive any of the Disputed Funds. Answer, ECF No. 29. This proceeding is core under 28 U.S.C. § 157(b)(2)(K) ("determinations of the validity, extent, or priority of liens").

The Disputed Funds were disbursed by the project owners under construction contracts for two unrelated government projects. Kappa, the contractor for both projects, failed to pay all its subcontractors and material suppliers and also failed to pay a workers' compensation premium. Hanover, Kappa's surety under both projects' payment and performance bonds, paid the subcontractors and suppliers and the workers' compensation premium that Kappa did not pay.

Hanover asserts that it is therefore entitled to the Disputed Funds—$130,107.60 for one project and $58,019.77 for the other—under the principle of equitable subrogation, which gives a surety the right to the retainage withheld on public works contracts to ensure project completion and payment of materialmen and laborers. The First asserts that it is entitled to the Disputed Funds because its security interest in Kappa's accounts receivable, general intangibles, and account

---

[1] "ECF No. ___" indicates a citation to the docket in this adversary proceeding. "Case ECF No. ___" indicates a citation to the docket in the underlying chapter 11 case.

proceeds was perfected before the payment and performance bonds were executed and is therefore superior to Hanover's rights.

The right of a surety to retainage is superior to a creditor's security interest in accounts receivable, general intangibles, and account proceeds regardless of when the creditor's security interest was perfected. Accordingly, summary judgment is granted to Hanover and denied to The First. Hanover is entitled to the Disputed Funds in the amounts Hanover was required to pay under each project's payment and performance bonds. Hanover is also entitled to attorney's fees and expenses in an amount yet to be determined. The First is entitled to any remaining balance.

## UNDISPUTED FACTS

### I. The First's Perfected Security Interest.

1. On September 3, 2010, Kappa executed a Promissory Note for Loan No. XXX0631 in favor of The First in the principal amount of $850,000.00, as modified by Promissory Note dated December 10, 2011; Promissory Note dated April 9, 2013; Promissory Note dated July 10, 2014; Promissory Note dated October 1, 2015; and Loan Modification Agreement dated March 14, 2017 (together, "2010 Note"). The First MSJ Ex. A, Cl. No. 2, ECF No. 42-1 at 4-14.

2. Also on September 3, 2010, and in connection with the 2010 Note, Kappa executed a Commercial Security Agreement, as modified by Commercial Security Agreement dated December 10, 2011; Commercial Security Agreement dated April 9, 2013; Commercial Security Agreement dated July 10, 2014; and Commercial Security Agreement dated October 1, 2015 (together, "2010 Security Agreement). *Id.* at 15-39.

3. On September 13, 2010, and in connection with the 2010 Note and the 2010 Security Agreement, The First filed UCC Financing Statement Number 20100194368A, which covered the following collateral:

3

> All inventory, accounts receivable and equipment, whether any of the foregoing it owned now or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing, all records of any kind relating to the foregoing, all proceeds relating to any of the foregoing (including insurance, general tangibles and accounts proceeds).

*Id.* at 40.

4. Kappa is in default on the 2010 Note. The amount due and owing on Loan No. xxx0631 as of June 12, 2017, the date of the bankruptcy petition, was $859,137.50. The First MSJ, Fact No. 6, ECF No. 42 at 4; Hanover Resp., Fact No. 6, ECF No. 51 at 3.

## II. City of Waveland Project

5. On October 9, 2014, Kappa entered into a contract with the City of Waveland, Mississippi, designated as FEMA Hazard Mitigation Program ("City of Waveland Project"). The First MSJ, Fact No. 7, ECF No. 42 at 4; Hanover MSJ, Fact No. 3, ECF No. 34 at 2.

6. On October 9, 2014, Hanover executed and issued a Performance Bond and a Payment Bond as surety for Kappa with respect to its contract for the City of Waveland Project. Hanover MSJ Ex. 2, Moses Aff. Exs. C, D, ECF No. 34-2 at 11-16.

7. Hanover paid a total of $67,683.92 to the following subcontractors and suppliers that provided labor or materials on the City of Waveland Project and made claims on Hanover's Payment Bond:

    Delta Industries - $12,656.34

    Soil Tech Consultants- $30,027.58

    Precision Pipe & Products Company - $25,000.00

    Hanover MSJ Ex. 2, Moses Aff. ¶¶ 14-15, ECF No. 34-2 at 3.

8. Kappa failed to pay these subcontractors and suppliers. *Id.* ¶ 15.

9. Kappa's payment defaults on the City of Waveland Project occurred pre-petition. Cl. No. 7 (Delta Industries); Sch. E/F: Creditors Who Have Unsecured Claims, Cl. No. 3.45, Case ECF No. 9 at 28 (Soil Tech Consultants); Sch E/F, Cl. No. 3.41, Case ECF No. 9 at 26 (Precision Pipe & Products Company).

10. The Payment Bond required Hanover to pay subcontractors and suppliers that Kappa failed to pay. Hanover MSJ Ex. 2, Moses Aff. Ex. D, Payment Bond para. beginning "NOW, THEREFORE," ECF No. 34-2 at 14.

11. During the City of Waveland Project, disputes arose between Kappa, the City of Waveland, and The Pickering Firm, which was the engineering firm of record for the City of Waveland Project. These disputes were still unresolved when Kappa filed its bankruptcy case. The First MSJ, Fact No. 8, ECF No. 42 at 4; Hanover Resp. Fact No. 8, ECF No. 51 at 3.

12. On March 26, 2018, Kappa asked the Court to approve a settlement between Kappa, the City of Waveland, and The Pickering Firm. *See* The First MSJ Ex. B, Mot. to Approve Settlement & Compromise, ECF No. 42-2. Under the proposed settlement agreement ("Settlement Agreement"), the City of Waveland would pay Kappa $421,731.76 in "final payment for closeout of the Project." *Id.* at 8. Of that amount, $130,107.60 was identified as "Retainage." Mot. to Approve Settlement & Compromise Ex. 2, Kappa-Waveland Global Settlement, *id.* at 73.

13. The Court approved the Settlement Agreement in an order ("Order Approving Settlement Agreement") that defined $130,107.60 of the settlement funds as "Retainage," ordered that the Retainage be paid into the registry of the Court and held there until further order resolving the priority of Hanover's and The First's claims, and found "that the Retainage

shall maintain and retain its form and substance as retainage while in the Court's registry to the same extent as if continued to be held by Waveland." Order ¶¶ 2, 3, Case ECF No. 209 at 2.

14. The First consented to the Order Approving Settlement Agreement. *Id.* at 4.

15. The amount certified for final payment to Kappa for the City of Waveland Project included retainage of $130,107.60. Phelan Aff. ¶ 5, ECF No. 51-3 at 2.

### III. Camp Shelby Project

16. On October 28, 2015, Kappa entered into a contract with the Mississippi Military Department designated as Repairs to the Sanitary Sewer System Drainage Basin ("Camp Shelby Project"). The First MSJ, Fact No. 18, ECF No. 42 at 6; Hanover MSJ, Fact No. 1, ECF No. 34 at 2.

17. On November 4, 2015, Hanover executed and issued a Performance Bond and a Payment Bond as surety for Kappa with respect to Kappa's contract for the Camp Shelby Project. Hanover MSJ Ex. 2, Moses Aff. Exs. A, B, ECF No. 34-2 at 5-10.

18. Hanover paid a total of $121,146.78 to the following subcontractors and suppliers that provided labor or materials on the Camp Shelby Project and made claims on Hanover's Payment Bond:

    Mississippi Utilities Supply Co. - $65,570.66

    Ruiz Contracting Solutions - $38,325.25

    Burns Dewatering Services - $17,250.87

    Hanover MSJ Ex. 2, Moses Aff. ¶¶ 13, 15, ECF No. 34-2 at 3.

19. Kappa failed to pay these subcontractors and suppliers. *Id.* ¶ 15.

20. Kappa's payment defaults on the Camp Shelby Project occurred pre-petition. Sch. E/F: Creditors Who Have Unsecured Claims, Cl. No. 3.36, Case ECF No. 9 at 25 (Mississippi Utilities Supply Co.); Sch. E/F, Cl. No. 3.44, Case ECF No. 9 at 27 (Ruiz Contracting Solutions); Sch. E/F, Cl. No. 3.6, Case ECF No. 9 at 15 (Burns Dewatering Services).

21. The Payment Bond required Hanover to pay subcontractors and suppliers that Kappa failed to pay. Hanover MSJ Ex. 2, Moses Aff. Ex. B, Payment Bond para. beginning "The above obligation is void," ECF No. 34-2 at 8.

22. The amount approved for final payment to Kappa for the Camp Shelby Project was $67,516.06, of which $58,019.77 was retainage. Bryant Aff. ¶¶ 5-6, ECF No. 34-3 at 2.

23. The $67,516.06 was paid to Kappa pre-petition. The First MSJ, Fact No. 19, ECF No. 42 at 6; Hanover Resp., Fact No. 19, ECF No. 51 at 4.

24. The Court authorized Kappa to use up to $5,000.00 of the final payment to pay a workers' compensation premium and ordered the remaining funds to be placed in a restricted-access debtor in possession account. Order, Case ECF No. 71.

### IV. Workers' Compensation Premium and Attorney's Fees

25. Kappa failed to pay a premium for its workers' compensation insurance coverage; Hanover paid the premium for Kappa in the amount of $18,362.00 on April 6, 2017. Hanover MSJ, Fact No. 12, ECF No. 34 at 4; The First Resp., Fact No. 12, ECF No. 45 at 3.

26. The City of Waveland Project contract required Kappa to furnish and maintain workers' compensation insurance. Phelan Aff. ¶ 3, ECF No. 51-3 at 2; Ex. 1A ¶ 8.7, ECF No. 51-3 at 6; Ex. 1B ¶ 21.1.1, ECF No. 51-3 at 8.

27. The Performance Bond for the City of Waveland Project required Hanover to pay the workers' compensation premium that Kappa failed to pay. Hanover MSJ Ex. 2, Moses Aff.

Ex. C, Performance Bond para. beginning "NOW, THEREFORE," ECF No. 34-2 at 11 ("conditions and agreements of said contract").

28. Hanover has paid $43,858.61 to the Brunini Law Firm, which it engaged to represent Hanover's interests arising from Kappa's defaults under the Bonds for the Camp Shelby Project, the City of Waveland Project, and two other construction jobs. Moses Aff. ¶ 20, ECF No. 34-2 at 4.

## CONCLUSIONS OF LAW

### I. Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also* Fed. R. Bankr. P. 7056 (applying Rule 56 to adversary proceedings). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law. An issue is 'genuine' if the evidence is sufficient for a reasonable [fact-finder] to return a verdict for the non-moving party." *Ginsberg 1985 Real Estate P'ship v. Cadle Co.*, 39 F.3d 528, 531 (5th Cir. 1994) (citations omitted). A party asserting that a fact either is genuinely disputed or cannot be genuinely disputed must support the assertion by citations "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

The moving party bears the initial responsibility of informing the court of the basis for its motion and the parts of the record that indicate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Once the moving party presents the . . . court with a properly supported summary judgment motion, the burden shifts to the nonmoving party to

8

show that summary judgment is inappropriate." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). But the nonmovant must meet its burden with more than metaphysical doubt, conclusory allegations, unsubstantiated assertions, or a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

On cross-motions for summary judgment, each movant must establish the absence of a genuine issue of material fact and the movant's entitlement to judgment as a matter of law. *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 538-39 (5th Cir. 2004). "If there is no genuine issue and one of the parties is entitled to prevail as a matter of law, the court may render summary judgment." *Id.* at 539.

## II. The First Attempts to Create Issues of Material Fact.

With either no support in the record or in contradiction to materials in the record, The First represents these statements as facts:

- that Hanover electively paid subcontractors and materialmen, The First Br., ECF No. 43 at 10, 12;
- that Hanover electively paid Kappa's workers' compensation premium, The First Resp. Fact No. 12, ECF No. 45 at 3;
- that the Disputed Funds are not retainage, The First Resp. Fact Nos. 18-21, *id.* at 4.

Whether Hanover's payments were elective is material. *See Seelbinder v. Am. Sur. Co.*, 119 So. 357, 359 (Miss. 1928) ("If a surety pays a debt he is not legally bound to pay, he is a volunteer, and he cannot recover the money so paid . . . ."). As to whether Hanover was legally

9

bound to pay the subcontractors and suppliers and the workers' compensation premium, the record speaks for itself. *See supra* Undisputed Facts, Nos. 10, 21, 27.

Whether the Disputed Funds are retainage is also material. Under Mississippi law, the surety's right of equitable subrogation extends only to retainage, not to progress payments. *Reliance Ins. Co. v. First Miss. Nat'l Bank*, 263 So. 2d 555, 558 (Miss. 1972) (citing *First Nat'l Bank v. Monroe Cty.*, 95 So. 726 (1923)) ("[T]he surety did not have a superior right or equity to progress payments due under a public contract over an assignment held by a bank . . . ."). As to whether the Disputed Funds are retainage, again, the record speaks for itself. *See supra* Undisputed Facts, Nos. 12-15, 22. Nonetheless, The First asserts three challenges, all without merit.

The First asserts as an undisputed fact that $130,107.60 of the final payment from the City of Waveland was "improperly characterized as 'Retainage'" in the Order Approving Settlement Agreement that resolved the disputes between Kappa, the City of Waveland, and The Pickering Firm. The First MSJ, Fact No. 17, ECF No. 42 at 6. The First could have added, but did not, that the Order Approving Settlement Agreement was a consent order to which The First agreed. *See* Case ECF No. 209 at 3. "A 'consent decree' is a court order that embodies the terms *agreed upon by the parties* as a compromise to litigation." *Chisolm v. Greenstein*, 876 F. Supp. 2d 709, 712 (E.D. La. 2012) (emphasis added). It follows that by agreeing to the Order Approving Settlement Agreement, the First agreed that the $130,107.60 was retainage for the City of Waveland Project and, further, that the $130,107.60 would "maintain and retain its form and substance as retainage while in the Court's registry to the same extent as if continued to be held by Waveland," Order, Case ECF No. 209 at 3.

The First also asserts that this Court has already adjudicated that the $58,019.77 for the Camp Shelby Project is not retainage. The First Br. ¶ 37, ECF No. 43 at 9 ("As adjudicated by this

10

Court . . . the Camp Shelby Funds are not retainage."). The First is incorrect, having misconstrued an opinion and order holding only that funds paid to Kappa pre-petition for the Camp Shelby Project were property of the bankruptcy estate. *See* ECF No. 12 at 9 ("The Funds are therefore property of the estate . . . subject to any property interests of Hanover and other creditors.")

Finally, The First asserts, again incorrectly, that the absence of an amount identified as "retainage" in Kappa's final payment applications means the Disputed Funds are not retainage. The First Br. ¶¶ 35, 46, ECF No. 43 at 9, 11-12. But no retainage would be withheld on final payment application because the project had been completed, as Hanover explains:

> Because *final* payment applications are submitted upon certification that the project has been satisfactorily completed, it is self-evident that [Kappa's] Final Waveland Payment Application and the Final Camp Shelby Payment Application would not reflect amounts for the owners to continue to retain to satisfy claims of unpaid subcontractors or materialmen. Thus, the absence of a stated "retainage" amount in a final payment application does not change the nature of retainage withheld during the contract . . . .

Hanover Resp., ECF No. 51 at 8.

### III. Kappa's Failure to Sign the Payment Bond for the Camp Shelby Project Is Immaterial.

Citing no authority, The First argues that "Hanover does not have the privity and contractual authority to assert its rights or claims" on the Payment Bond for the Camp Shelby Project because the signature field for Kappa as Principal is blank. The First Br. ¶ 36, ECF No. 43 at 9. Hanover, calling this position "nonsensical," counters that the Mississippi Military Department found the Payment Bond acceptable, or "no contract would have been let." Hanover Resp., ECF No. 51 at 14 n.8.

"[W]hen . . . the failure of the principal to sign the instrument in no way affects the rights of the surety, the instrument is valid, and the surety is bound." *St. Louis Brewing Ass'n v. Hayes*, 97 F. 859, 862 (5th Cir. 1899) (ruling under Texas statutes providing for joint action against both

11

principal and sureties and observing that surety would be liable only if principal failed to pay). Such is the circumstance here, where the Payment Bond binds Hanover jointly and severally with Kappa and where Hanover would be liable only if Kappa failed to pay. *See* ECF No. 34-2 at 8. Accordingly, the Payment Bond is valid.

### IV. Hanover's Right of Subrogation Is Superior to The First's Perfected Security Interest.

"The doctrine of equitable subrogation applies 'whenever any person, other than a mere volunteer, pays a debt or demand which in equity and good conscience should have been paid by another . . . .'" *Rogers v. CIT Grp./Equip. Fin., Inc. (In re B.C. Rogers Poultry, Inc.)*, 455 B.R. 524, 566 (Bankr. S.D. Miss. 2011). The surety's right of equitable subrogation relates back to the date the bond was issued. *Reliance*, 263 So. 2d at 558 (citing *Canton Exch. Bank v. Yazoo Cty.*, 109 So. 1 (1926)). The right of equitable subrogation is not governed by the priority rules of the Uniform Commercial Code. *Travelers Indem. Co. v. Clark*, 254 So. 2d 741, 746 (Miss. 1971) ("[W]e hold that a surety's right of subrogation is unaffected by the filing requirements of the Uniform Commercial Code."). When the funds at issue are retainage, the surety's right of equitable subrogation is superior to the right of an assignee bank. *Canton Exch. Bank v. Yazoo Cty.*, 109 So.1, 7-8 (Miss. 1926).

"[A] debtor's property rights are determined by state law, while federal bankruptcy law applies to establish the extent to which those rights are property of the estate." *Croft v. Lowry (In re Croft)*, 737 F.3d 372, 374 (5th Cir. 2013). Here, under bankruptcy law, the retainage for the City of Waveland Project never became property of the estate. And the retainage for the Camp Shelby Project became property of the estate subject to Hanover's right of equitable subrogation, which was unaffected by perfection of The First's security interest.

A. Hanover Is Entitled to the $58,019.77 Retainage for the Camp Shelby Project.

Hanover's right of equitable subrogation in the retainage for the Camp Shelby Project dates from the issuance of the Payment Bond, and the Payment Bond pre-dated the filing of the bankruptcy case. Accordingly, the retainage portion of the final payment to Kappa came into the estate subject to Hanover's interest. *See Ga. Pac. Corp. v. Sigma Serv. Corp.*, 712 F.2d 962, 966 (5th Cir. 1983) (citing 11 U.S.C. § 541(d)). The First argues that because its security interest under the U.C.C. was perfected before the Payment Bond was issued, Hanover's right to the retainage is secondary. The First Br. ¶ 37, ECF No. 43 at 9.

But because the surety's right of equitable subrogation is based on equity, not the U.C.C., it is immaterial whether The First filed its financing statement before or after the Bond was issued. Either way, Hanover wins. This conclusion applies not just under Mississippi law, but across jurisdictions. As the authors of one treatise approvingly observe, the overwhelming weight of case law favors the surety for retainage regardless of whether the bonds were executed before the financer's security interest was perfected. *See* 1 Barkley Clark & Barbara Clark, *The Law of Secured Transactions Under the Uniform Commercial Code* § 1.07[2]-[3] (3d ed.), LexisNexis (2018) ("Once the priority conflict is taken outside the confines of Article 9 [of the U.C.C.], the blue ribbon should be given to the surety, even when the bonds are executed after the bank's security interest is perfected."); *e.g., In re J.B. Constr. Co.*, No. BK 10-80880-TJM, 2011 WL 830101, at *2 (Bankr. D. Neb. Mar. 4, 2011) (quoting *U.S. Fid. & Guar. Co. v. APAC-Kansas, Inc.*, 151 F. Supp. 2d 1297, 1300 (D. Kan. 2001)) ("[The contractor] has not cited, nor has this court found, any authority requiring that the surety's interest predate another creditor's interest for the doctrine of equitable subrogation to control.").

Further, as Hanover points out, whether The First has any rights in the retainage depends on whether Kappa had any rights in the retainage. *See* Miss. Code Ann. § 75-9-203(b)(2) ("[A] security interest is enforceable against the debtor . . . only if . . . [t]he debtor has rights in the collateral . . . ."); *Stribling Invs., LLC v. Mike Rozier Constr. Co.*, 189 So. 3d 1216, 1220 (Miss. 2016) ("[T]he assignee's rights can rise no higher than the assignor[']s . . . ."

As a defaulting contractor, Kappa had no rights in the retainage. *See United States v. TAC Constr. Co.*, 760 F. Supp. 590 (S.D. Miss. 1991). In *TAC*, the relevant contest was between the contractor, two assignee banks, and unpaid subcontractors and suppliers; the sureties, having not yet paid any of the claims, had no rights in the funds, which had been interpleaded into the registry of the court. *Id.* at 593-94. There, as here, the contractor had not paid its subcontractors and suppliers. *Id.* at 593. The court held that the contractor was therefore not entitled to the retainage. *Id.* (quoting *Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 141 (1962)) ("[T]he contractor, had he completed his job and paid his laborers and materialmen, would have become entitled to the [contract retainage] fund . . . ."). The assignee banks were not entitled to the retainage either, having only the right that the contractor had. *Id.* at 594. Here, as in *TAC*, Kappa had no rights in the retainage. Accordingly, The First has no rights in the retainage.

The First cites two cases under Mississippi law, neither of which supports its argument that a perfected security interest wins the day. In *Kimberly-Clark Corp. v. Alpha Building Co.*, it was the surety's right of equitable subrogation that was held superior, not the claim of a bank with a perfected security interest in contract proceeds. *Kimberly-Clark Corp. v. Alpha Bldg. Co.*, 591 F. Supp. 198, 201, 208 (N.D. Miss. 1984). And in *Reliance*, the funds the assignee bank was entitled to were progress payments, not retainage. 263 So. 2d at 556, 559.

The First also argues that its security interest is superior because the rights to which Hanover is subrogated are those of the subcontractors and suppliers that Hanover paid, who would be general unsecured creditors in the bankruptcy case. The First Br. ¶ 38, ECF No. 43 at 10. This argument is based on a frequently quoted explanation of the doctrine of equitable subrogation that describes the surety as standing in the shoes of the contractor, the subcontractors and suppliers, and the project owner:

> When, upon default of the contractor, it pays all the bills of the job to date and completes the job, it stands in the shoes of the contractor insofar as there are receivables due it; in the shoes of laborers and materialmen who have been paid by the surety—who may have had liens; and not least, in the shoes of the government [owner], for whom the job was completed.

*Mendelsohn v. Dormitory Auth. of N.Y. (In re QC Piping Installations, Inc.)*, 225 B.R. 553, 562 (Bankr. E.D.N.Y. 1998).

However, because Hanover's right of equitable subrogation relates back to the date of the issuance of the Payment Bond, the bankruptcy estate succeeded only to Kappa's possessory interest in the retainage, not to the interests of the subcontractors and suppliers. *See In re Jones Constr. & Renovation, Inc.*, 337 B.R. 579, 583-84 (Bankr. E.D. Va. 2006) (quoting *Pearlman*, 371 U.S. at 135-36) ("The Bankruptcy Act simply does not authorize a trustee to distribute other people's property among a bankrupt's creditors."). The First cites no authority to the contrary.

B. Hanover Is Entitled to $86,045.92 of the Retainage for the City of Waveland Project.

The First makes the same arguments for its entitlement to the retainage for the City of Waveland Project as for the Camp Shelby Project, that (1) the perfection of its security interest pre-dated the issuance of the Bonds and (2) Hanover succeeds only to the rights of a general unsecured creditor in the bankruptcy case. The First Br. ¶¶ 39-48, ECF No. 43 at 10-13. These arguments fail again and for the same reasons, with one variation: To the extent Hanover was

15

required to pay and perform under the Bonds, the retainage for the City of Waveland Project never became property of the bankruptcy estate.

The United States Supreme Court recognized the surety's right of subrogation in retainage held by the project owner at the time of bankruptcy adjudication in a case decided before the enactment of the Bankruptcy Code, *Pearlman v. Reliance Insurance Co.*, 371 U.S. 132 (1962). Most bankruptcy courts have held that *Pearlman* survives the enactment of the Code. *Am. States Ins. Co. v. United States*, 324 B.R. 600, 605 (N.D. Tex. 2005) (collecting cases). This Court agrees.

Here, as in *Pearlman*, the retainage was in the hands of the project owner, the City of Waveland, when the bankruptcy case was filed. Post-petition, an amount that included the retainage was deposited into the registry of the Court, where it remains to this day. Accordingly, under *Pearlman*, the retainage belongs to Hanover to the extent Hanover was required to pay and perform under the Bonds, i.e., in the amount of $86,045.92 for payments to subcontractors and suppliers and for the workers' compensation premium.

### V. Hanover's Right of Subrogation Includes Attorney's Fees and Expenses.

"[The surety]'s subrogation right includes the right to be indemnified for its expenses and attorney's fees incurred as the result of [the contractor]'s default." *Kimberly-Clark Corp.*, 591 F. Supp. at 208 (citing *Travelers Indem. Co. v. Clark*, 254 So. 2d 741, 745 (Miss. 1971)). It is undisputed that Hanover has paid $43,858.61 in attorney's fees and expenses in connection with Kappa's defaults, but how much of that total was spent in connection with the Camp Shelby Project and the City of Waveland Project, as opposed to other projects not relevant here, is unknown.

The amount of retainage for the Camp Shelby Project is insufficient even to cover Hanover's payments to subcontractors and suppliers for that project, meaning that the retainage for the City of Waveland Project is the only source for attorney's fees under Hanover's right of

subrogation. And the only attorney's fees and expenses that may be paid out of retainage for the City of Waveland Project are the fees and expenses incurred as a result of Kappa's defaults on the City of Waveland Project. *See U.S. Fid. & Guar. Co. v. Hous. Auth. of Berwick*, 557 F.2d 482, 485 (5th Cir. 1977) ("[T]here is no suggestion that the contract between the public body and the contractor allowed excess retainage from one job to be used to pay claims on another job."). Accordingly, Hanover has fourteen days in which to submit a request for attorney's fees and expenses paid as a result of Kappa's defaults on the City of Waveland Project.

## ORDER

The Motion for Summary Judgment by Hanover is therefore **ORDERED GRANTED** and the Motion for Summary Judgment by The First is **ORDERED DENIED**; and

**FURTHER ORDERED** that under the doctrine of equitable subrogation, Hanover is entitled to the $58,019.77 retainage for the Camp Shelby Project; and $86,045.92 of the $130,107.60 retainage for the City of Waveland Project[2] and attorney's fees and expenses incurred for the City of Waveland Project in an amount yet to be determined; and

**FURTHER ORDERED** that under its perfected security interest, The First is entitled to whatever amount of the Disputed Funds may remain.

## *END OF ORDER* ##

---

[2] Calculation: $67,683.92 (payments to subs and suppliers) plus $18,362.00 (workers' compensation premium).